UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA   '

   v.        '   Criminal No.: 4:23-CR-00351

PETER J. TIGNINI,   '
   Defendant   '

## Plea Agreement

The United States of America, by and through Alamdar Hamdani, United States Attorney for the Southern District of Texas, and the United States Department of Justice, Tax Division, and the defendant, Peter Tignini, and defendant's counsel, Wendell Odom, Brian Hobson, and Derek Matta, pursuant to Rules 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

## Defendant's Agreement

1. Defendant agrees to plead guilty to the Information filed in this case. The Information charges defendant with one count of willfully evading the accurate assessment of his 2015 individual income taxes in violation of Title 26, United States Code, Section 7201. Defendant, by entering this plea, agrees that he is waiving any right to have the facts

that the law makes essential to the punishment either charged in the Information, proved to a jury, or proved beyond a reasonable doubt.

## Punishment Range

2. The statutory maximum penalty for each violation of Title 26, United States Code, Section 7201, is imprisonment of not more than five years and a fine of not more than $250,000. Additionally, defendant may receive a term of supervised release after imprisonment of up to three years. See Title 18, United States Code, Sections 3559(a)(4) and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. See Title 18, United Stated Code, Section 3583(g)-(k). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

2

## Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has advised defendant of the potential immigration consequences resulting from defendant's plea of guilty.

3

## Waiver of Appeal and Collateral Review

5. Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. In the event defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and will seek specific performance of these waivers.

6. In agreeing to these waivers, defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the

sentencing guidelines that he may have received from his counsel, from the United States, or from the U.S. Probation Office is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the U.S. Probation Office, or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing defendant, the Court is not bound to follow the Sentencing Guidelines nor to sentence defendant within the calculated guideline range.

7. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

5

## The Parties' Agreements

8. The United States and defendant agree to the following:

(a) The parties agree that, for the purposes of sentencing, the intended tax loss, including all relevant conduct for tax years 2013 through 2018 is between $550,000 and $1,500,000 and that the correct base offense level is 20. USSG Section 2T4.1(H) (2021 ed.).

(b) The parties agree that defendant is subject to a two-level enhancement under USSG Section 2T1.1(b)(2) because his conduct constituted sophisticated means.

(c) The parties agree that defendant is subject to a two-level enhancement under USSG Section 3C1.1 for obstructing the administration of justice with respect to the investigation of the instant offense of conviction.

(d) The parties agree that defendant has accepted responsibility for his offense for purposes of sentencing in this case. USSG Section 3E1.1.

(e) The parties understand that, if the Court determines that defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines and if the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will not move the Court for an additional one-level reduction under USSG Section 3E1.1(b).

(f) The parties agree that the appropriate restitution to the Internal Revenue Service in this case is $1,169,348.60.

**Agreement Binding - Southern District of Texas Only**

9.  The United States Attorney's Office for the Southern District of Texas and the United States Department of Justice, Tax Division, agree that the government will not further criminally prosecute defendant in the Southern District of Texas for offenses arising from conduct charged in the Information. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas, the United States Department of Justice, Tax Division, and defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of defendant's cooperation to the attention of other prosecuting offices, if requested.

## United States' Non-Waiver of Appeal

10.     The United States reserves the right to carry out its

responsibilities under guidelines sentencing. Specifically, the United

States reserves the right:

(a)     to bring its version of the facts of this case, including its
evidence file and any investigative files, to the attention of the
U.S. Probation Office in connection with that office's preparation
of a presentence report;

(b)     to set forth or dispute sentencing factors or facts
material to sentencing;

(c)     to seek resolution of such factors or facts in conference
with defendant's counsel and the U.S. Probation Office;

(d)     to file a pleading relating to these issues, in accordance
with section 6A1.2 of the United States Sentencing Guidelines
and Title 18, United States Code, section 3553(a); and

(e)     to appeal the sentence imposed or the manner in which
it was determined.

## Sentence Determination

11.     Defendant is aware that the sentence will be imposed after

consideration of the United States Sentencing Guidelines and Policy

Statements, which are only advisory, as well as the provisions of Title

18, United States Code, section 3553(a). Defendant nonetheless

acknowledges and agrees that the Court has authority to impose any

8

sentence up to and including the statutory maximum set for the offense to which defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or if the Court should order any or all the sentences imposed to run consecutively, defendant cannot, for that reason alone, withdraw a guilty plea. Defendant will remain bound to fulfill all the obligations under this plea agreement.

## Rights at Trial

12.    Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

> (a)    If defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by

a judge sitting without a jury if defendant, the United States, and the court all agree.

(b)   At a trial, the United States would be required to present witnesses and other evidence against defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, defendant could, but would not be required, to present witnesses and other evidence on his own behalf. If the witnesses for defendant would not appear voluntarily, defendant could require their attendance through the subpoena power of the court; and

(c)   At a trial, defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if defendant desired to do so, he could testify on his own behalf.

(d)   The defendant also has the right to have the United States Attorney present the charges in the Criminal Information to a Grand Jury, consisting of not less than 16 nor more than 23 impartial citizens, who would hear the facts of the case as presented by the United States Attorney and witnesses. The Grand Jury would return an indictment against the defendant only if 12 or more members of the Grand Jury found that there was probable cause to believe that the defendant committed the crimes charged in the Criminal Information.

## Factual Basis for Guilty Plea

13.     Defendant is pleading guilty because he is in fact guilty of the charge contained in the Information. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others, would be offered to establish defendant's guilt:

14.     Defendant Peter Joseph Tignini, a U.S. citizen, worked in the United Arab Emirates (UAE) and Qatar during tax years 2012 to 2018. As part of his employment, Tignini signed a contract with his employer stating that Tignini was responsible for submitting his own tax returns and paying the corresponding tax. The employer had a "Tax Equalization" program that it offered to employees who were American citizens; however, Tignini was never enrolled in such a program, and Tignini knew he was never enrolled in such a program.

15.    During tax years 2013 through 2018, Tignini earned the following income:

| Year | Income |
|------|--------|
| 2013 | $463,075 |
| 2014 | $796,060 |
| 2015 | $1,206,902 |
| 2016 | $1,101,910 |
| 2017 | $608,662 |
| 2018 | $606,422 |
| **Total** | **$4,783,031** |

16.    Tignini directed his income to be deposited into foreign bank accounts, including accounts in the UAE and Qatar.

17.    The Foreign Earned Income (FEI) exclusion allows a U.S. citizen who lived and worked in a foreign country for a significant portion of any tax year to exclude a portion of their income earned outside the United States from their taxable income. As described below, the maximum FEI exclusion has increased slightly over time, but during the relevant years, U.S. citizens living and working abroad could exclude the first $100,000 (approximately) of their salary from their taxable income.

18.    On or about February 2, 2014, Tignini and his wife jointly filed an individual income tax return, IRS Form 1040, with the IRS for

12

tax year 2013. Tignini signed this return under penalty of perjury, and he materially underreported his income, instead reporting income slightly above the FEI exclusion limit for 2013.

19.    On or about August 15, 2019, Tignini and his wife jointly filed belated individual income tax returns, IRS Forms 1040, with the IRS for tax years 2014 through 2017. Tignini signed each return under penalty of perjury. On each return, Tignini materially underreported his income, instead reporting income below the FEI exclusion limit for 2014 through 2017.

20.    Neither Tignini nor his wife filed an individual income tax return, IRS Form 1040, for tax year 2018.

21.    The table below identifies the annual FEI exclusion limit, Tignini's and his wife's income as reported on his individual income tax returns, Tignini's actual income, and the resulting tax loss to the United States.

| Tax Year | FEI Exclusion Limit | Tignini's Claimed Income | Tignini's Actual Income | Tax Loss |
|---|---|---|---|---|
| 2013 | $97,600 | $98,000 | $463,075 | $133,717 |
| 2014 | $99,200 | $96,000 | $796,060 | $238,811 |
| 2015 | $100,800 | $97,000 | $1,206,902 | $322,414 |
| 2016 | $101,300 | $100,000 | $1,101,910 | $250,990 |
| 2017 | $102,100 | $100,000 | $608,662 | $101,732 |
| 2018 | $104,100 | N/A | $606,422 | $121,684 |
| | | | **Total Tax Loss:** | **$1,169,348** |

22.    On or about February 11, 2020, Special Agents with the Internal Revenue Service – Criminal Investigation (IRS-CI), interviewed Tignini, at which time they introduced themselves as IRS-CI Special Agents and questioned Tignini about his tax returns. At first, Tignini claimed that he did not file or mail the belated returns for tax years 2014 through 2017, stating instead that he was in Dubai at the time the returns were mailed from Texas. However, Tignini later acknowledged that he moved to Texas four months before the belated returns were filed.

23.    On or about June 3, 2021, Tignini used an internet application to manipulate his contract and payroll documents between himself and his former employer. Tignini fraudulently altered the

contract to appear as if his former employer was responsible for submitting his tax returns and paying the corresponding tax, and that Tignini had been enrolled in the employer's "Tax Equalization" program. Likewise, Tignini fraudulently altered the payroll documents to make them appear as if his former employer made "Tax Equalization" payments to the Internal Revenue Service on Tignini's behalf. Tignini saved both the original documents and the altered documents to his account with the internet application.

24.     On or about October 4, 2022, attorneys representing Tignini met with the Department of Justice, Tax Division, and an IRS-CI Special Agent. Tignini caused his attorneys to provide to the government the fraudulently-altered documents that Tignini created and caused his attorneys to represent that Tignini believed that his employer had filed individual income tax returns and paid the corresponding taxes on his behalf.

25.     Tignini also represented, through counsel, that he had not created the altered documents but rather received the altered employment contracts and payroll documents from a witness ("Witness

A"), who had purportedly secured the documents from another, anonymous witness.

26.     Tax Division prosecutors and IRS-CI Special Agents scheduled an interview with Witness A on March 7, 2023. On or about March 1, 2023, Tignini caused the altered documents to be sent to Witness A.

27.     On or about March 7, 2023, prosecutors and IRS-CI Special Agents asked Witness A if he was familiar with the internet application that Tignini used to alter his contract and payroll documents. That day, Tignini attempted to delete both the original documents and the altered documents saved to his account with the internet application.

28.     Tignini agrees that the relevant conduct, or intended tax loss, in this case for purposes of sentencing is $1,169,348.60.

29.     All the above acts took place in the Southern District of Texas, Houston Division, and elsewhere.

## Breach of Plea Agreement

30.     If defendant should fail in any way to fulfill completely all the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement and defendant's

plea and sentence will stand. If at any time defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the court to set aside the guilty plea and to reinstate prosecution. Any information and documents that have been disclosed by defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

## Restitution and Fines – Generally

### Restitution

31.     Defendant agrees to pay full restitution to the victim regardless of the count of conviction. As noted above, defendant agrees to pay restitution to the IRS in this case of $1,169,348.60. Defendant understands that under 26 U.S.C. 6201(a)(4), the IRS will use the amount of restitution ordered as the basis for a civil assessment of taxes. Defendant understands and agrees that the Court will determine the amount of restitution that will fully compensate the victim. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that defendant will not attempt to avoid or

17

delay payment. Subject to the provisions of paragraph 5 above,
defendant waives the right to challenge in any manner, including by
direct appeal or in a collateral proceeding, the restitution order imposed
by the Court.

32.     Defendant agrees to make his restitution payments to the
Clerk of Court, including on each payment the defendant's name, social
security number, the district court's docket number assigned this case,
the tax periods for which restitution has been ordered, and a statement
that the payment is being submitted pursuant to the Court's restitution
order. The defendant shall also include with the restitution payment a
request that the Clerk of Court send the information and restitution
payment to the IRS at the following address:

> IRS-RACS
> Attn.: Mail Stop 6261, Restitution
> 333 W. Pershing Ave.
> Kansas City, MO 64108

The defendant also agrees to send a notice of any restitution payment
made to the Clerk of Court to the IRS at the above address.

33.     Defendant agrees to sign any IRS forms deemed necessary
by the IRS to enable the IRS to make an assessment of any amount

ordered in restitution, including but not limited to IRS form 8821

entitled "Tax Information Authorization."

## Fines

34.    Defendant understands that under the Sentencing

Guidelines the Court is permitted to order defendant to pay a fine that

is sufficient to reimburse the government for the costs of any

imprisonment or term of supervised release, if any. Defendant agrees

that any fine imposed by the Court will be due and payable

immediately, and defendant will not attempt to avoid or delay payment.

Subject to the provisions of paragraph 5 above, defendant waives the

right to challenge the fine in any manner, including by direct appeal or

in a collateral proceeding.

## Criminal Tax Loss and Civil Tax Liability

35.    Defendant understands that the amounts of relevant

conduct (intended tax loss) and restitution found by the court in this

criminal case do not limit the IRS in determining whether defendant or

any other taxpayer owes any additional civil taxes, interest, or civil

penalties on any U.S. Individual Income Tax Year. Defendant further

understands that the IRS is free to civilly audit any of defendant's U.S.

Individual Income Tax Years and any income tax years of any other

taxpayer to seek additional taxes, interest, or civil penalties for such

income tax years. Defendant further understands that the IRS remains

free to civilly audit his businesses, or any other business, on any U.S.

Corporate Income Tax Year. Defendant further understands that the

IRS remains free to civilly audit any taxpayer for any tax other than

income taxes for any tax year or tax period and to seek additional taxes,

interest, or civil penalties for such tax years or tax periods.

36.     Defendant agrees not to file any claim for refund of any

amount ordered or paid in restitution in this case. Defendant further

agrees not to file any action in a U.S. District Court, in the U.S. Tax

Court, or in the U.S. Court of Federal Claims seeking a refund, offset, or

other recovery of any amounts ordered or paid in restitution in this

case.

37.     Defendant agrees to cooperate fully with the Internal

Revenue Service in determining the correct tax liabilities owed on any

of his U.S. Individual Income Tax Years and on any of his business's

U.S. Corporate Income Tax Returns. Defendant agrees to make all

books, records, and documents in his possession, custody, or control
available to the Internal Revenue Service for use in computing all civil
tax liabilities, including both income tax and any other tax liabilities, of
any taxpayer for any tax year or tax period.

38.     Nothing in this plea agreement shall limit the IRS in its
lawful examination, determination, assessment, or collection of any
taxes, penalties, or interest due from any taxpayer for any income taxes
or other taxes. Defendant agrees that this plea agreement and any
judgment, order, release, or satisfaction issued in connection with this
plea agreement will not satisfy, settle, offset, or compromise defendant's
or any other taxpayer's obligation to the pay the balance of any civil tax
liabilities, including additional civil taxes, penalties, or interest, on any
income taxes or other taxes owed by any taxpayer on any tax year or
other tax period.

## Complete Agreement

39.     This written plea agreement, consisting of 25 pages,
including the attached addendum of defendant and his attorneys,
constitutes the complete plea agreement between the United States,
defendant, and defendant's counsel. No promises or representations

have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

24. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston Texas, on July AUG 9, 2023.

_____
Peter Tignini
Defendant

Subscribed and sworn to before me on _____August 21_____ , 20 23.

_____
Nathan Ochsner
NATHAN OCHSNER, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

22

APPROVED:

    Alamdar S. Hamdani
    United States Attorney

By: _____         _____

    Sean Beaty                       Wendell Odom
    Senior Litigation Counsel      Brian Hobson
    Brian Flanagan            Derek Matta
    Trial Attorney              Attorneys for Defendant
    U.S. Department of Justice
    Tax Division
    150 M Street, 1.204         440 Louisiana Street, Suite 200
    Washington, DC 20002     Houston, TX 77002
    (202) 616-3362           (713) 223-5575
    Fax: (202) 514-0961       Fax: (713) 224-2815

    Adam Goldman
    Assistant U.S. Attorney
    1000 Louisiana Street, 24th Floor
    Houston, TX 77002
    (713) 567-9534
    (713) 718-3303

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA　'
　　　　　　　　　　　　　　'
　　　　v.　　　　　　　　　'　Criminal No.: 4:23-CR-
　　　　　　　　　　　　　　'
PETER J. TIGNINI,　　　　　'
　　　　　　Defendant　　　'

**Plea Agreement – Addendum**

I have fully explained to defendant his rights with respect to the pending Information. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements, and I have fully and carefully explained to defendant the provisions of those Guidelines which may apply in this case. I have also explained to defendant that the Sentencing Guidelines are only advisory and the court may sentence defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with defendant.

24

To my knowledge, defendant's decision to enter into this agreement is an informed and voluntary one.

_____          _____8/10/23_____
Wendell Odom                             Date
Attorney for Defendant


I have consulted with my attorney and fully understand all my rights with respect to the information pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____          ____9 August 2023____
Peter J. Tignini                         Date
Defendant

25